UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 12 - 4114**

------------------------------------------ X

ELIZABETH GIBSON, and GERDING SPEARE,

                                    Plaintiffs,          **COMPLAINT**

                    -against-

THE CITY OF NEW YORK; SGT. BREWSTER; SGT.          ECF Case
ANDREW HILLERY, TAX # 925457; SGT.
LIPPERT; DET. ANDREW FAGO; TAX # 928265;          Jury Trial Demanded
DET. DELPRETE; DET. FAZIO; DET. COGNATO;
DET. MALPESO; DET. RIVAS; DET. MEIGS;
DET. SANCHEZ; DET. SPOSITO; DET. RIVERA;          WEINSTEIN, J.
DET. FRIED; DET. BROOKS; DET. HENANDEZ;
and DET. BANGHART; the individual
defendant(s) sued individually and in
their official capacities,

                                    Defendants.          ORENSTEIN

------------------------------------------ X

### PRELIMINARY STATEMENT

    1.    This is a civil rights action in which plaintiffs
seek relief for the violation of plaintiffs' rights secured by
42 U.S.C. §§ 1983; and the Fourth and Fourteenth Amendments to
the United States Constitution. Plaintiffs' claims arise from
an incident that arose on or about August 27, 2010. During the
incident, the City of New York, and members of the New York City
Police Department ("NYPD") subjected plaintiffs to, among other
things, unlawful search and seizure, false arrest, unreasonable
force, failure to intervene, and implementation and continuation
of an unlawful municipal policy, practice, and custom.

Plaintiffs seek compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant 42 U.S.C. §§ 1988, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3.    Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Richmond County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

5.    Plaintiff Elizabeth Gibson is a resident of the State of New York, Richmond County.

6.    Plaintiff Gerding Speare is a resident of the State of New York, Richmond County.

7.    Defendant City of New York is a municipal corporation organized under the laws of the State of New York, which violated plaintiffs' rights as described herein.

2

8.    Defendants Sgt. Brewster, Sgt. Andrew Hillery assigned Tax # 925457, Sgt. Lippert, Det. Andrew Fago, assigned Tax # 928265, Det. Delprete, Det. Fazio, Det. Cognato, Det. Malpeso, Det. Rivas, Det. Meigs, Det. Sanchez, Det. Sposito, Det. Rivera, Det. Fried, Det. Brooks, Det. Henandez, and Det. Banghart are New York City Police Officers, employed with the 120th Precinct and/or "NBSI", located in Richmond County, New York or other as yet unknown NYPD assignment, who violated plaintiffs' rights as described herein.

9.    The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

### Apartment # 510

10.    On August 27, 2010, at and in the vicinity of 55 Bowen Street, Apt. # 510, Staten Island, New York, and the 120th Precinct, Staten Island, New York, several police officers operating from the 120th Precinct and "NBSI", located in Richmond County, New York, including upon information and belief, defendants Sgt. Hillery, Sgt. Brewster, Sgt. Lippert, Det. Andrew Fago, Det. Delprete, Det. Fazio, Det. Cognato, Det. Malpeso, Det. Rivas, Det. Meigs, Det. Sanchez, and Det. Sposito, at times acting in concert and at times acting independently,

committed the following illegal acts against plaintiff Elizabeth Gibson.

11.     On August 27, 2010, at approximately 5:00 a.m., at and in the vicinity of 55 Bowen Street, Apt. # 510, Staten Island, New York ("the apartment"), the defendant officers, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime unlawfully entered the apartment.

12.     The defendant officers broke through the door of the apartment.

13.     Elizabeth Gibson rented Apartment # 510.

14.     Elizabeth heard a loud noise.

15.     Elizabeth was using the bathroom when the defendant officers entered her home.

16.     Elizabeth was in her nightgown.

17.     The defendant officers kicked the bathroom door open while Elizabeth was sitting on the toilet and pointed firearms and flashlights at her.

18.     The defendant officers shouted at Elizabeth, and threatened to shoot her if she moved.

19.     Elizabeth was terrified.

4

20.    The defendant officers would not let her get off the toilet and get dressed.

21.    Instead the defendant officers grabbed Elizabeth and dragged her into the living room, wrenching her arms behind her back.

22.    The defendant officers twisted her arms as Elizabeth tried to ask what was happening.

23.    The defendant officers ignored Elizabeth's questions.

24.    After some time, Elizabeth was allowed to dress under the supervision of a female officer.

25.    The female officer placed handcuffs on Elizabeth's wrists that were too tight, and the defendant officers ignored her requests to loosen them.

26.     Elizabeth was physically injured as a result of the excessive use of force, suffering marks to her body and pain.

27.    The defendant officers threatened to destroy the apartment if Elizabeth and her family did not tell the defendant officers where the "drugs" were located.

28.    The defendant officers also threatened to bring a canine unit into the apartment.

29.    Elizabeth told the defendants that there were no drugs in the apartment.

30.    The defendant officers searched the apartment, ransacking it unnecessarily.

31.    The defendant officers found no controlled substances, contraband, or weapons in the apartment or on any of the occupants, including plaintiff.

32.    Instead of freeing Elizabeth and leaving the apartment, the defendant officers falsely claimed that they found controlled substances in the apartment.

33.    The defendant officers took the Elizabeth outside the apartment to a police van with other members of her family. The other individuals were also arrested and brought a civil suit regarding the same incident entitled *Gbor, et al. v. City of New York, et al.*, 11-CV-2824-ERK-RML.

**Apartment # 406**

34.    On August 27, 2010, at and in the vicinity of 55 Bowen Street, Apt. # 406, Staten Island, New York, and the 120th Precinct, Staten Island, New York, several police officers operating from the 120th Precinct and "NBSI", located in Richmond County, New York, including upon information and belief, defendants Sgt. Hillary, Sgt. Brewster, Det. Fago, Det. Rivera, Det. Fried, Det. Brooks, Det. Hernandez, Det. Banghart. Det.

Meigs, Det. Sanchez, Det. Sposito Det. Fazio, and Det. Cognato, at times acting in concert and at times acting independently, committed the following illegal acts against plaintiff Gerding Speare.

35.    On August 27, 2010, at approximately 5:00 a.m., at and in the vicinity of 55 Bowen Street, Apt. # 406, Staten Island, New York ("the apartment"), the defendant officers, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime unlawfully entered the apartment.

36.    The defendant officers broke through the door of the apartment.

37.    Gerding Speare rented Apartment # 406.

38.    Gerding was sleeping when she heard a crash and people moving.

39.    The defendant officers kicked open Gerding's bedroom door with their firearms drawn and shouted at her.

40.    Gerding was shocked and tried to find out what was going on.

41.    Gerding was dressed in her nightclothes.

42.    The defendant officers grabbed Gerding from her bed and pulled her into her living room.

7

43.   The defendant officers twisted her arms behind her back.

44.   The defendant officers ignored Gerding's questions as she tried to find out what why this was happening.

45.   After some time Gerding was allowed to dress under the supervision of a female officer.

46.   The female officer placed handcuffs on Gerding's wrists that were too tight.

47.   Gerding tried to explain that she had injured one her one of her wrists at work that the handcuffs were hurting her, but the defendant officers ignored her requests to loosen the handcuffs.

48.   Gerding was physically injured as a result of the excessive use of force, suffering marks to her body and pain.

49.   The defendant officers searched the apartment, ransacking it unnecessarily.

50.   The defendant officers found no controlled substances, contraband, or weapons in the apartment or on any of the occupants, including plaintiff.

51.   Instead of freeing Gerding and leaving the apartment, the defendant officers falsely claimed that they found controlled substances in the apartment.

**Transport to the Precinct, Dismissals and General Allegations**

52.    The defendant officers took the Elizabeth and Gerding from their respective apartments to an awaiting police van with another members of their families who were also arrested.

53.    The defendant officers drove plaintiffs to the 120th Precinct for arrest processing.

54.    One person vomited in the van during the ride.

55.    The defendant officers processed plaintiffs' arrest at the 120th Precinct.

56.    Elizabeth was given an arrest number.

57.    Gerding was given Arrest # S10609778.

58.    In order to cover up their illegal actions, the defendant officers, pursuant to a conspiracy, falsely and maliciously told the Richmond County District Attorney's Office that plaintiffs had committed various crimes.

59.    The defendants made these false allegations, despite the fact that they had no evidence that plaintiffs had committed a crime, to cover up their misconduct, to meet productivity goals and quotas, and to justify overtime expenditures.

60.    However, because there was no basis to arrest plaintiffs, much less prosecute plaintiffs, the Richmond County District Attorney's Office declined to prosecute plaintiffs.

61.    Plaintiffs were released on August 27, 2010, and the cases against them terminated in their favor.

62.    The individual defendants acted in concert committing the above-described illegal acts toward plaintiffs.

63.    Plaintiffs did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

64.    At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiffs had violated any law, regulation, or administrative code; committed any criminal act; or acted in a suspicious or unlawful manner prior to or during the above incidents.

65.    The defendants acted under pretense and color of state law and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said

10

defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their rights.

66.   As a direct and proximate result of defendants' actions, plaintiffs experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

67.   Plaintiffs are entitled to receive punitive damages from the individual defendants because the individual defendants' actions were motivated by extreme recklessness and indifference to plaintiffs' rights.

68.   Upon information and belief, the unlawful actions against plaintiffs were also based on profiling.

### FIRST CLAIM

#### (UNLAWFUL SEARCH AND SEIZURE)

69.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

70.   Defendants unlawfully entered plaintiffs' homes, and searched plaintiffs without cause, a lawful warrant, or consent.

71.   Accordingly, defendants are liable to plaintiffs for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

11

## SECOND CLAIM

### (FALSE ARREST)

72.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

73.   Defendants falsely arrested plaintiffs without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

74.   Accordingly, defendants are liable to plaintiffs for false arrest under 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## THIRD CLAIM

### (UNREASONABLE FORCE)

75.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

76.   The individual defendants' use of force upon plaintiffs was objectively unreasonable.

77.   The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiffs, since plaintiffs were unarmed, compliant, and did not resist arrest.

12

78. Those defendants who did not touch plaintiffs, witnessed these acts, but failed to intervene and protect plaintiffs from this conduct.

79. Accordingly, the defendants are liable to plaintiffs for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

### FOURTH CLAIM

### (FAILURE TO INTERVENE)

80. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

81. Defendants had a reasonable opportunity to prevent the violations of plaintiffs' constitutional rights, but they failed to intervene.

82. Accordingly, the defendants are liable to plaintiffs for failing to intervene to prevent the violation of plaintiffs' constitutional rights.

### FIFTH CLAIM

### (MONELL CLAIM)

83. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

13

84.   Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiffs.

85.   Defendant City of New York through the NYPD and its officers, committed the following unconstitutional practices, customs and policies against plaintiffs: (1) unlawfully entering innocent persons' homes; (2) wrongfully arresting innocent persons in order to meet productivity goals; (3) wrongfully arresting individuals based on pretexts and profiling; (4) using unreasonable force on individuals; and (5) fabricating evidence against innocent persons.

86.   Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants were unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

87.   Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.   The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.   Moreover, upon information and belief, defendant City of New York failed to adequately

14

investigate prior complaints filed against the individual
defendants.

88.    Further, defendants City of New York was aware
prior to the incident that the individual defendants (in
continuation of its illegal custom, practice and/or policy)
would stop, arrest and prosecute innocent individuals, based on
pretexts and false evidence.

89.    The existence of the aforesaid unconstitutional
customs and policies may be inferred from repeated occurrences
of similar wrongful conduct involving the individual defendants,
placing the defendant City of New York on notice of the
individual defendants' propensity to violate the rights of
individuals.

90.    In addition to frequently violating the civil
rights of countless residents of New York City, numerous members
of the NYPD commit crimes. Officers have been arrested and
convicted of such crimes as planting evidence on suspects,
falsifying police reports, perjury, corruption, theft, selling
narcotics, smuggling firearms, robbery, fixing tickets, driving
under the influence of alcohol, vehicular homicide, assault and
domestic violence. In fact, former NYPD Commissioner Bernard
Kerik was convicted of corruption-related crimes in federal and
state court and served time in federal prison. In 2011, Brooklyn

15

South narcotics officer Jerry Bowens was convicted of murder and attempted murder in Supreme Court, Kings County, while under indictment for corruption and is presently serving a life sentence. In 2011, Police Officer William Eiseman and his subordinate Police Officer Michael Carsey were convicted of felonies in Supreme Court, New York County, for lying under oath, filing false information to obtain search warrants and performing illegal searches of vehicles and apartments. In 2012, New York City Police Officer Michael Pena was convicted in Supreme Court, New York County, of raping and sexually assaulting a woman at gunpoint and is presently serving a sentence of 75 years to life.

91.    Additionally, the existence of the aforesaid unconstitutional customs and polices of profiling minorities, may be inferred from an analysis of the NYPD conducted by the New York Civil Liberties Union ("NYCLU").  The NYCLU's analysis revealed that more than 2 million innocent New Yorkers were subjected to police stops and street interrogations from 2004 through 2011, and that black and Latino communities continue to be the overwhelming target of these tactics.  Nearly nine out of 10 stopped-and-frisked New Yorkers have been completely innocent, according to the NYPD's own reports.

16

92.   In August 2009, Proffer Levine released a report entitled *The Epidemic of Pot Arrests in New York City*, which stated: Perhaps most appalling is who the police are arresting for marijuana possession.  United States government studies have consistently found that young whites use marijuana at higher rates than do young blacks or Latinos. But the NYPD has long arrested young blacks and Latinos for pot possession at much higher rates than whites. In 2008, blacks were about 26% of New York City's population, but over 54% of the people arrested for pot possession. Latinos were about 27% of New Yorkers, but 33% of the pot arrestees. Whites were over 35% of the City's population, but less than 10% of the people arrested for possessing marijuana. In 2008, police arrested Latinos for pot possession at four times the rate of whites, and blacks at seven times the rate of whites.

93.   Furthermore, documented civilian complaints about officer misconduct show that African Americans are the most likely targets of abuse, but their complaints are largely ignored.  According to the City of New York's Civil Complaint Review Board's ("CCRB") Status Report, dated December and January 2010, in 2010 African Americans were overrepresented as alleged victims of police misconduct.  Although making up only 23% of New York City's population, they are 58.5% of the alleged

17

victims in CCRB complaints.  On the other hand, whites and
Asians were a disproportionately low percentage of alleged
victims.

94.   The foregoing customs, policies, usages,
practices, procedures and rules of the City of New York and the
NYPD were the direct and proximate cause of the constitutional
violations suffered by plaintiffs as alleged herein.

95.   The foregoing customs, policies, usages,
practices, procedures and rules of the City of New York and the
NYPD were the moving force behind the constitutional violations
suffered by plaintiffs as alleged herein.

96.     The City's failure to act resulted in the violation of plaintiffs' constitutional rights as described herein.

**WHEREFORE**, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

a.      Compensatory damages in an amount to be determined by a jury;

b.      Punitive damages in an amount to be determined by a jury;

c.      Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.      Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:      Brooklyn, New York
            August 15, 2012

                        MICHAEL O. HUESTON, ESQ.
                        *Attorney for Plaintiffs*
                        16 Court Street, Suite 3301
                        Brooklyn, New York 11241
                        (212) 246-2900
                        mhueston@nyc.rr.com
                        By:

                        _____
                        MICHAEL O. HUESTON